UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| RODNEY LEVETT BARTLETT,<br><br>        Plaintiff(s),<br><br>v.<br><br>KILOLO KIJAKAZI,<br><br>        Defendant(s). | Case No. 2:21-cv-01579-NJK<br><br>**ORDER**<br><br>[Docket Nos. 18, 20] |

    This case involves judicial review of administrative action by the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for disability insurance benefits pursuant to Title II of the Social Security Act.  Currently before the Court is Plaintiff's Motion for Reversal and/or Remand.  Docket No. 18.  The Commissioner filed a response in opposition and a cross-motion to affirm.  Docket Nos. 20-21.  Plaintiff filed a reply.  Docket No. 22.

    The parties consent to resolution of this matter by the undersigned magistrate judge.  *See* Docket No. 3; *see also* Gen. Order 2019-08.

**I.    BACKGROUND**

    A.    <u>Procedural History</u>

    On May 2, 2018, Plaintiff filed an application for disability insurance benefits with an alleged disability onset date of August 16, 2015.  *See, e.g.*, Administrative Record ("A.R.") 356-59.  On November 27, 2018, Plaintiff's claim was denied initially.  A.R. 252.  On January 30, 2019, Plaintiff's claim was denied on reconsideration.  A.R. 265.  On February 11, 2019, Plaintiff filed a request for a hearing before an administrative law judge.  A.R. 286-87.  On September 9, 2020, Plaintiff, Plaintiff's representative, and a vocational expert appeared for a hearing before ALJ Jane Maccione.  *See* A.R. 200-38.  On November 18, 2020, the ALJ issued an unfavorable decision finding that Plaintiff had not been under a disability since the date the

application was filed. A.R. 26-46. On July 7, 2021, the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review. A.R. 6-12.

On August 26, 2021, Plaintiff commenced this action for judicial review. Docket No. 1.

### B. The Decision Below

The ALJ's decision followed the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520. A.R. 31-40. At step one, the ALJ found that Plaintiff met the insured status requirement through September 30, 2017, and had not engaged in substantial gainful activity since the application date through the date last insured. A.R. 31. At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, partial rotator cuff tear of the right shoulder, osteoarthritis and medial meniscal tear of the right knee, and obstructive sleep apnea. A.R. 32-33. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. A.R. 33-34. The ALJ found that Plaintiff has the residual functional capacity to:

> perform light work as defined by 20 C.F.R. § 404.1567(b), except that he was able to climb ramps and stairs frequently; he could not climb ropes, ladders, or scaffolds. He was able to balance frequently and to stoop, kneel, crouch and crawl occasionally. The claimant was able to reach frequently in all directions with his right, dominant, upper extremity. He needed to avoid concentrated exposure to vibration. In addition, the claimant required protection from workplace hazards, such as unprotected heights and dangerous moving mechanical moving parts.

A.R. 34-39. At step four, the ALJ found Plaintiff capable of performing past relevant work as an inventory clerk and appointment clerk. A.R. 39-40.

Based on all of these findings, the ALJ found Plaintiff not disabled. A.R. 40.

## II. STANDARDS

The standard for determining disability is whether a social security claimant has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(3)(A). That determination is made by following a five-step sequential evaluation process. *Bowen v. Yuckert*,

482 U.S. 137, 140 (1987) (citing 20 C.F.R. §§ 404.1520, 416.920).  The first step addresses whether the claimant is currently engaging in substantial gainful activity.  20 C.F.R. §§ 404.1520(b), 416.920(b).[1]  The second step addresses whether the claimant has a medically determinable impairment that is severe or a combination of impairments that significantly limits basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  The third step addresses whether the claimant's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926.  There is then a determination of the claimant's residual functional capacity, which assesses the claimant's ability to do physical and mental work-related activities.  20 C.F.R. §§ 404.1520(e), 416.920(e).  The fourth step addresses whether the claimant has the residual functional capacity to perform past relevant work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  The fifth step addresses whether the claimant is able to do other work considering the residual functional capacity, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 416.920(g).

After exhausting the administrative process, a claimant may seek judicial review of a decision denying social security benefits.  42 U.S.C. § 405(g).  The Court must uphold a decision denying benefits if the proper legal standard was applied and there is substantial evidence in the record as a whole to support the decision.  *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005).  Substantial evidence is "more than a mere scintilla," which equates to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, ___ U.S. ___, 139 S.Ct. 1148, 1154 (2019).  "[T]he threshold for such evidentiary sufficiency is not high."  *Id.*

### III.  ANALYSIS

Plaintiff raises a single issue on appeal.  Two state agency consultants found that Plaintiff could only occasionally reach overhead, in front, and laterally with the right upper extremity.  A.R. 246, 261.  The ALJ did not adopt that finding and, instead, concluded that Plaintiff could "reach

---

[1] The five-step process is largely the same for both Title II and Title XVI claims.  For a Title II claim, however, a claimant must also meet insurance requirements.  20 C.F.R. § 404.130.

3

frequently in all directions with his right, dominant, upper extremity." A.R. 34.  Plaintiff argues that the ALJ erred by doing so.  Mot. at 6-10; *see also* Reply at 3-5.  The Commissioner counters that the ALJ's finding was supported by the record and free from legal error.  Resp. at 4-12.

### A. Applicable Regulations

For claims filed on or after March 27, 2017, the Court reviews an ALJ's evaluation of medical opinions based on the new regulations promulgated.  *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (Jan. 18, 2017).  Under these regulations, the persuasiveness of a medical opinion is based on (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) "other factors."  20 C.F.R. § 404.1520c(a)-(c).  "[A]n ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must articulate . . . how persuasive it finds all of the medical opinions from each doctor or other source, and explain how [it] considered the supportability and consistency factors in reaching these findings."  *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (internal citations and quotations omitted).

### B. Application

In this case, two agency consultants found that Plaintiff could only occasionally reach overhead, in front, and laterally.  A.R. 246, 260-61.  Although the ALJ considered the findings of these consultants persuasive in many respects, the ALJ did not consider them persuasive on this particular issue.  A.R. 37-38.  The ALJ determined that the consultants' finding was (1) not consistent with the medical record; (2) not consistent with Plaintiff's failure to exhaust conservative treatment options for his right shoulder; and (3) not consistent with the conservative nature of the treatment received.  A.R. 37-38.  Instead, the ALJ determined that Plaintiff could "reach frequently in all directions with his right, dominant, upper extremity."  A.R. 34.  The ALJ did not err in so concluding.

With respect to the first consideration, the ALJ relied on a number of exhibits in the medical record that were inconsistent with the finding of the state agency consultants.  A.R. 38.  The record includes multiple medical examinations that evidence a normal range of motion and no pain in

4

Plaintiff's right upper extremity. The record from Plaintiff's physical examination on September 1, 2017, states that his right upper extremity had "range of motion *normal* [and] *no pain* with joint motion." A.R. 632 (emphasis added). The record from Plaintiff's physical examination on April 5, 2017, similarly indicates that his right upper extremity had "*range of motion normal*, *no . . . pain* with motion present." A.R. 648 (emphasis added). Plaintiff does not address these aspects of the record or provide meaningful argument as to how the ALJ could have erred in relying on them in finding that Plaintiff can reach frequently. The Court does not find error in the ALJ's conclusion that the record was inconsistent the finding of the state agency consultants that Plaintiff could reach only occasionally. *Cf. Ford v. Saul*, 950 F.3d 1141, 1159 (9th Cir. 2020) (noting "deferential" nature of the substantial evidence review).

With respect to the failure to pursue conservative treatment options, it has long been clear that an ALJ may consider a claimant's unexplained or inadequately explained failure to seek treatment. *See, e.g.*, *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) (en banc).[2] Nonetheless, Plaintiff contends that the ALJ failed to specify the forms of treatment that she would have expected for a claimant asserting disability. Docket No. 18 at 9. Plaintiff is wrong. The ALJ specifically referenced the medical record showing that Plaintiff's treatment did not include chiropractic care, acupuncture, message therapy, or a TENS unit.[3] *See* A.R. 38 (citing Exhibit 20F/6); *see also* A.R. 780 (Exhibit 20F/6). Plaintiff has advanced no meaningful argument addressing his failure to pursue these treatment options and the ALJ's reliance thereon.[4] The Court does not find error.

---

[2] This reasoning is advanced most frequently in the context of an ALJ discounting a claimant's own testimony. Plaintiff has not argued in this case that an ALJ cannot rely on this reasoning with respect to medical findings. Any such argument has been waived. *See Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (per curiam); *see also Rameriz v. Comm'r of Soc. Sec.*, 2012 WL 5328624, *4 (E.D. Cal. Oct. 29, 2012) (any arguments not specifically and distinctly made in challenging ALJ's findings in the district court are deemed waived).

[3] "TENS unit" refers to a nerve stimulation used to treat pain. *E.g.*, *Bates v. Colvin*, 736 F.3d 1093, 1096 n.2 (7th Cir. 2013).

[4] Without meaningful elaboration, Plaintiff relies on a notation in the record from 2015 that he felt pain the days he underwent physical therapy. Mot. at 8 (citing A.R. 857). Plaintiff has not advanced any meaningful argument, however, that such notation explains why he did not, *inter alia*, use a TENS unit or get massages for his shoulder.

With respect to the conservative nature of the treatment received, Plaintiff argues that the ALJ's finding was not supported by substantial evidence because Plaintiff received injections and took opioids. *See* Mot. at 8 & n.5. Courts within the Ninth Circuit (including this one) have rejected similar contentions that the existence in a course of treatment of narcotics and/or injections establishes error with respect to a finding of conservative treatment. *See Pederson v. Berryhill*, 2019 WL 5295538, at *6 (D. Nev. Mar. 21, 2019); *see also Aurelio A. v. Saul*, 2020 WL 10321754, at *10 (S.D. Cal. Oct. 28, 2020) (collecting cases). The Court is similarly unpersuaded here by Plaintiff's sweeping contention that substantial evidence did not support the ALJ's finding that the treatment received was conservative in nature.[5]

In short, the ALJ did not err in crafting a residual functional capacity that Plaintiff can "reach frequently in all directions with his right, dominant, upper extremity" notwithstanding the agency findings to the contrary.

## IV.  CONCLUSION

Accordingly, the Court **DENIES** the motion for reversal or remand (Docket No. 18) and **GRANTS** the countermotion to affirm (Docket No. 20). The decision below is **AFFIRMED**. The Clerk's Office is instructed to **ENTER FINAL JUDGMENT** and to **CLOSE** this case.

IT IS SO ORDERED.

Dated: June 21, 2022

_____
Nancy J. Koppe
United States Magistrate Judge

---

[5] Plaintiff argues that the ALJ erred in discussing two injections, when he actually received five. Mot. at 7-8. Plaintiff bears the burden of establishing harmful error, *see, e.g., Shinseki v. Sanders*, 556 U.S. 396, 409 (2009), which is satisfied by showing that the error was not "inconsequential to the ultimate nondisability determination," *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015). Plaintiff has not established the harmfulness of any error with respect to the number of injections. Plaintiff also argues that the ALJ erred in failing to consider a surgery consult predating the alleged onset date. Mot. at 9. Plaintiff has not shown that consideration of a surgical consult that was not acted upon from before the onset date would be consequential to the nondisability finding. Lastly, Plaintiff argues that the ALJ failed to consider the opioids that he was taking. Mot. at 6-7. This argument is unavailing given that the ALJ explicitly referenced the medical record identifying these opioids in finding the treatment to be conservative in nature. A.R. 36 (citing, *inter alia*, Exhibit 5F/1); *see also* A.R. 488 (Exhibit 5F/1, indicating that Plaintiff was taking Soma and Oxycodone). At any rate, Plaintiff has not shown that his taking opioids would alter the outcome.